# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 13CR3488 WQH |
|---|---|
| Plaintiff, | ORDER |
| vs. | |
| GARY YIN, | |
| Defendant. | |

Hayes Judge,

The matter before the Court is the request by the Plaintiff United States of America for an order of restitution to Merrill Lynch in the amount of $3,881,001.73 representing losses and prejudgment interest in following three categories: 1) $3,448.664.21 in third party document control costs, forensic consulting costs, and attorney fees and internal investigation costs; 2) $228,287.00 for attorney fees paid by Merrill Lynch for representation of Defendant Yin; and 3) $190,742.91 for compensation paid to Defendant Yin.  (ECF No. 54 at 2).

## BACKGROUND FACTS

In February of 2013, a federal search warrant was executed at the San Diego branch office of Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") and the residence of Defendant Gary Yin by agents of the Federal Bureau of Investigation (FBI).  The search warrants authorized a search for evidence relating to insider trading allegations made against Defendant Yin, a Merrill Lynch vice president, and Jing Wang, a client of Yin.  Counsel for Defendant Yin was retained by Bank of America (Merrill

1 Lynch)[1], pursuant to an Advancement of Legal Expenses with an Undertaking
2 Agreement signed by Defendant Yin.

3     To respond to this investigation, and subsequent requests from the Department
4 of Justice ("DOJ") and the Securities and Exchange Commission ("SEC"), Merrill
5 Lynch retained outside professional firms, including the law firm of WilmerHale LLP
6 ("WilmerHale"), the forensic accounting firm of Capital Forensics, Inc., and the
7 document control firm of Huron Consulting Group, Inc. (Declaration of Mark A.
8 Davis, ECF No. 48-2 at 3). The government states the following facts in its
9 "Supplemental Sentencing Document Concerning Merrill Lynch's Claim for
10 Restitution" (ECF No. 54),

> During the course of its investigation, the government made (and Merrill Lynch responded to) numerous requests:
> 1. From the DOJ, Merrill Lynch received a February 15, 2013 DOJ search warrant; three subpoenas, dated February 19, February 27, and March 29, 2013; one fax request, dated March 14, 2014; one formal letter request, dated May 10, 2013; and several informal verbal and email requests.
> 2. The SEC also sent four separate subpoenas, dated February 27, April 10, May 30, and July 3, 2013, and dozens of informal verbal and email requests under the *In re Qualcomm* investigation. These subpoenas were separate from the DOJ subpoenas, had largely different scopes, and required different work streams.
> 3. The government conducted four interviews of Merrill Lynch employees regarding Mr. Yin's and Mr. Wang's conspiracy.
> 
> The requests were sweeping in scope, including:
> 1. A February 19, 2013 DOJ subpoena seeking all documents related to several key accounts and several key transactions over a seven year period from 2006 to 2013.
> 2. An SEC subpoena seeking all instances in which Mr. Yin traded in the same security on the same day or day after any one of its clients, over a seven year period from 2006 to 2013.[2] For this request, it was not sufficient just to produce documents. Merrill Lynch hired an outside forensic consultant - Capital Forensics Inc. ("Capital Forensics") - that amassed and analyzed tens of thousands of trades by both Mr. Yin and his clients.
> 3. An extensive email review including broad search terms such as "don't tell" and "jail."
> 
> In response to all the subpoenas and other requests, WilmerHale,

---

27 [1] Merrill Lynch is a Bank of America affiliate.

28 [2] The government has not submitted any evidence in the record relating to the subpoenas for piggyback trades in the SEC investigation or the DOJ investigation.

>with the assistance of Huron Consulting Group ("Huron") and Capital Forensics, reviewed over 430,000 documents and produced over 120,000 pages.

(United States' Supplemental Sentencing Document, ECF No. 54-1 at 6)[3].

On September 24, 2014, Defendant Yin entered a plea of guilty to a Superseding Information charging him with Conspiracy to commit offenses (Obstruction of Official Proceeding, and Conducting Transactions with Proceeds of Specified Unlawful Activity) in violation of Title 18, United States Code, Section 371. (Plea Agreement, ECF No. 9). As a part of the factual basis for the plea, Defendant admitted in the Plea Agreement that he was a registered representative of Merrill Lynch between 2007 and 2013, and that he became the financial advisor for Jing Wang, a senior vice-president at Qualcomm, Inc. beginning in 2005. Defendant admitted that Jing Wang discussed with him how to set up an "account that would allow Jing Wang to disguise his involvement in transferring funds to people in China" in March of 2006. *Id*. at 4. Defendant admitted that Jing Wang instructed him to set up Unicorn Global Enterprises in the British Virgin Islands, and "make it appear the Jing Wang's brother in China, Bing Wang[], was the beneficial owner of the company." *Id.* Defendant admitted that Jing Wang provided documents to him that gave "the false impression that Bing Wang would be the beneficial owner of the Unicorn account." *Id*. at 5. Defendant admitted that Jing Wang transferred $360,000 in Qualcomm stock-option proceeds from a Merrill Lynch account to the Unicorn brokerage account in April of 2006, and directed Defendant Yin to conduct transactions in the Unicorn account over the next several years.

Defendant admitted that Wang directed him to buy Qualcomm stock using the Unicorn account on March 1, 2010, that Qualcomm's trading window was closed, and that this trade violated Qualcomm's insider trading policy. Defendant admitted that he purchased Qualcomm stock for himself in his Pacific Rim and personal trust account on the same day, that he eventually sold the stock, and that he obtained $17,565 of gross

---

[3] The record contains no declaration to support these facts.

proceeds from the purchase and sale.

Defendant admitted in the plea agreement that Jing Wang instructed him in December of 2010 to sell all of Wang's shares of Qualcomm stock in the Unicorn account and to purchase as many shares of Atheros Communications, Inc. ("Atheros") as possible for the Unicorn account. The day after purchasing Atheros for Wang, Defendant also purchased Atheros shares using his Pacific Rim Account. On January 4, 2011, "Defendant recognized that Jing Wang's purchase of Atheros was illegal insider trading...." *Id.* at 9. On January 12, 2011, Defendant sold all of his shares in Atheros, obtaining gross proceeds of $9,880.

Defendant admitted in the plea agreement that Jing Wang instructed him to sell all Wang's shares in Atheros on January 25, 2011 and to use the proceeds to purchase Qualcomm stock. "This purchase by Jing Wang was also prohibited by Qualcomm's Insider Trading policy. Once again, both Defendant and Jing Wang concealed this trade by not reporting it to Qualcomm or the SEC." *Id.* at 10.

Defendant admitted in the plea agreement that "beginning in 2011 and continuing through February 2013, Defendant knowingly and willfully agreed with Jing Wang and Bing Wang to conceal Jing Wang's illegal activity by (1) corruptly obstructing an official proceeding – that is, an SEC investigation of Qualcomm and its executives, including Jing Wang – and (b) knowingly conducting unlawful transactions with proceeds of specified unlawful activity." *Id.* at 11. Defendant admitted to a series of overt acts in furtherance of this conspiracy, including transferring proceeds to another nominee account, creating and sending false emails, taking documents to Wang's brother in China, and making false representations to an FBI Special Agent. In the plea agreement, Defendant Yin represented that he understood that Count One included as a potential penalty, "an order from the Court pursuant to 18 U.S.C. § 3663 that Defendant make restitution to the victim(s) of the offense of conviction..." *Id*. at 16. Defendant agreed "that the amount of restitution ordered by the Court shall include defendant's total offense conduct, and is not limited to the count(s) of conviction." *Id.*

at 22.

# RULING OF THE COURT

<u>Investigative costs</u>

Merrill Lynch seeks restitution for legal services provided and costs incurred by WilmerHale between February 20, 2013 and August 29, 2014 in connection with (1) the criminal cases against Defendant Yin and Jing Wang by the DOJ, (2) the parallel case against Defendant Yin and Jing Wang by the SEC, and (3) the independent investigation into the conduct of Defendant Yin by Merrill Lynch.

The Declaration of Mark Davis, on behalf of Merrill Lynch, states in part:

> On behalf of Merrill Lynch, WilmerHale responded to subpoenas and other requests from the DOJ and SEC, producing hundreds of thousands of pages of documents. In connection with the investigations, several Merrill Lynch witnesses were prepared for live testimony and represented during the same. WilmerHale also conducted a thorough internal investigation to determine the extent of the co-conspirators' wrongdoing. As the DOJ and SEC charged, the wrongdoing included, but was not limited to: creating fraudulent brokerage accounts; engaging in insider trading; and covering up the conduct after the fact.
>
> Although Merrill Lynch also retained WilmerHale to respond to separate inquiries from the SEC, which were related to the issues and Merrill Lynch branches involved in the DOJ and SEC investigations at issue here, none of the expenses associated with those professional services are included in the listing contained at Exhibit A.

(Declaration of Mark Davis, ECF No. 48-2 at 3).

Subsequent to this submission, the government on behalf of Merrill Lynch, submitted under seal copies of invoices for legal services rendered by WilmerHale under billing code 1047600-00305 ("the 104 billing code"), dated between February 20, 2013 and August 29, 2014. WilmerHale created the 104 billing code to correspond to the charges to Merrill Lynch for services rendered in preparing Merrill Lynch's responses to the DOJ and the SEC as well as the internal investigation by Merrill Lynch. Each of the invoices submitted uses the 104 billing code. (Exhibit D, ECF No. 56). A WilmerHale attorney states under penalty of perjury as follows:

> Certain entries on the invoices contain redactions in the 'Description'

> section only, for information that is protected by the attorney work product doctrine and attorney-client privilege. The United States is seeking restitution for such entries. However, after further review of the invoices in connection with preparing the Memorandum, certain other entries have been redacted entirely because, erring on the side of caution, it is not entirely certain from the work description that 100% of the work was performed exclusively in connection with the Yin/Wang Matter (as defined at page 4 of the Memorandum). The fees incurred in connection with these entries are *not* included in the total calculation of the cost of legal services contained on page 4 of the Memorandum.

(Declaration of Somil Trivedi, ECF No. 54-2 at 2). [4] "Page 4 of the Memorandum" states that the invoices of WilmerHale attached as Exhibit D to the Trivedi Declaration

> detail the legal services provided and costs incurred by WilmerHale in connection with (1) the DOJ's criminal case against Mr. Yin and Mr. Wang, (2) the SEC's parallel cases against Mr. Yin and Mr. Wang (under the SEC's *In Re Qualcomm* investigation), and (3) Merrill Lynch's independent investigation of Mr. Yin and Mr. Wang's conduct (collectively, the "Yin/Wang matter) ...

(ECF No. 54-1 at 3-4).

Defendant contends that the Government has not shown by a preponderance of the evidence that Merrill Lynch is a victim, and that the fees requested were necessary to the investigation and prosecution of this case. The Government contends that Merrill Lynch's expenses incurred in providing responses to the Government's subpoenas and information requests are recoverable as restitution. The Government contends that the attorney billing records are sufficient to support a restitution award, and that the invoices reflect work that is compensable.

The Victim and Witness Protection Act of 1982 ("VWPA") provides that "[t]he court, when sentencing a defendant convicted of an offense under this title ... may order ... that the defendant make restitution to any victim of such offense...." 18 U.S.C. § 3663(a)(1)(A). "The court, in determining whether to order restitution under this section, shall consider – (I) the amount of loss sustained by each victim as a result of the offense; and (II) the financial resources of the defendant, the financial needs and

---

[4] In addition, Merrill Lynch submits the biographies of timekeepers at WilmerHale who worked on this matter as well as the summary of monthly average billing rates submitted under seal for each timekeeper. (ECF No. 62).

earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3663(a)(1)(B).  *See United States v. Smith*, 944 F.2d 618, 623-24 (9th Cir. 1991) ("[I]f a district court fails to consider a defendant's ability to pay, the court abuses the discretion afforded it by the Act.").

The Act defines the term "victim" as follows:

> For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663(a)(2).  In this case, there is no evidence that Merrill Lynch was a participant in the offense conduct or a co-conspirator.  There was no charge and no finding that the Defendant conspired with Merrill Lynch to commit the offense conduct. There is no evidence that Merrill Lynch assisted Defendant Yin, or facilitated the offense conduct in any culpable manner.  The Court concludes that Merrill Lynch may qualify as a victim under the VWPA.

The government bears the burden of proving the amount of the loss. 18 U.S.C. § 3664(e).  A dispute as to the proper amount of restitution must be resolved by the district court by a preponderance of the evidence. *Id.*  Under the VWPA, "the conduct underlying the offense of conviction must have caused a loss for which a court may order restitution but the loss cannot be too far removed from that conduct." *United States v. Gamma Tech Indus.*, 265 F.3d 917, 928 (9th Cir. 2001) *(citing United States v. Vaknin*, 112 F.3d 579, 590 (1st Cir. 1997) ("the government must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally")))).  In *United States v. Swor*, 728 F.3d 971, 974 (9th Cir. 2013), the Court of Appeals explained that "restitution may be awarded only for losses for which the defendant's conduct was an actual and proximate cause. 'But for' cause is insufficient." (internal quotations and citations omitted).  *See* 18

U.S.C. § 3663(a)(2) ("'victim' means a person directly and proximately harmed..."); *see also United States v. Riley*, 335 F.3d 919, 931-32 (9th Cir. 2003) (affirming restitution award on the grounds that "[a] conspirator is vicariously liable for reasonably foreseeable substantive crimes committed by a coconspirator in furtherance of the conspiracy").

"Generally, investigation costs - including attorneys' fees - incurred by private parties as a direct and foreseeable result of the defendant's wrongful conduct may be recoverable." *United States v. Gordon*, 393 F.3d 1044, 1057 (9th Cir. 2004) (internal quotations omitted). Courts have allowed fees for responding to a parallel SEC investigation where the SEC investigation was based upon essentially the same conduct. *See, e.g.*, *United States v. Gupta*, 925 F.Supp. 2d 581, 586 (S.D.N.Y. 2013) (allowing restitution where "the SEC's civil case against Gupta rests on essentially the same conduct that resulted in his criminal conviction"), *aff'd*, 747 F.3d 111 (2d Cir. 2014), *cert. denied*, 135 S.Ct. 1841 (2015); *United States v. Skowron*, 839 F. Supp. 2d 740, 748 (S.D.N.Y. 2012), *aff'd*, 529 F. App'x 71 (2d Cir. 2013) (allowing restitution where "the criminal prosecution of Skowron for securities fraud rested on essentially the same conduct as the SEC's civil case").

"[D]istrict courts [have] a degree of flexibility in accounting for a victim's complete losses." *Gordon*, 393 F.3d at 1053. "Section 3664 minimally requires that facts be established by a preponderance of the evidence, and the district court [may] utilize only evidence that possesses 'sufficient indicia of reliability to support its probable accuracy.'" *United States v. Waknine,* 543 F.3d 546, 557 (9th Cir. 2008) (internal quotation and citations omitted).

The evidence in the record of this case establishes by a preponderance that Merrill Lynch was required to spend funds to respond to the DOJ investigation of the insider trading, the use of off-shore accounts, and the attempted cover-up of insider trading as well as to conduct an internal investigation of insider trading, the use of off-shore accounts, and the cover-up of insider trading as a direct result of Defendant's

offense conduct. Merrill Lynch was required to respond to this investigation by the DOJ, and expended resources to respond to the subpoenas of the DOJ. The evidence in the record is not sufficient to prove by a preponderance that the fees incurred by Merrill Lynch responding to the SEC investigation rested on essentially the same conduct as the DOJ investigation into insider trading, the use of off-shore accounts, and the cover-up of insider trading or that the SEC investigation was necessary as a direct result of the Defendant's offense conduct.

The Declaration of Mark Davis provides the only description of the SEC investigation in this record. Davis, a vice president at Bank of America,[5] states, in relevant part, "As the DOJ and SEC charged, the wrongdoing included, but was not limited to: creating fraudulent brokerage accounts; engaging in insider trading; and covering up the conduct after the fact." (ECF No. 48-2 at 3). This statement is not sufficient to prove by a preponderance of the evidence that Merrill Lynch is entitled to restitution for the costs incurred in responding to the SEC investigation. The description of the DOJ and the SEC investigation by Davis is "too summary and too conclusory to be sufficiently reliable in the face of [] objections." *Waknine*, 543 F.3d at 557. The only factual representation in the government's pleadings describes the SEC subpoenas as "seeking all instances in which Mr. Yin traded in the same security on the same day or day after any one of its clients, over a seven year period from 2006 to 2013." (ECF No. 54-1 at 6). The government further describes the SEC subpoenas in its pleadings as "separate from the DOJ subpoenas, [] largely different in scopes, and requir[ing] different work streams." *Id*. Based upon the lack of evidence in the record, the Court concludes that Merrill Lynch is not entitled to recover restitution from Defendant Yin for work done by WilmerHale in responding to the SEC investigation. The Government shall redline Exhibit D to indicate all time entries related to fees incurred responding to the SEC investigation. The Government shall refile the redlined

---

[5]

exhibit under seal within ten days of the date of this order accompanied by declaration from an individual with personal knowledge of the procedure used to comply with the court's order and setting forth the total restitution requested, including any prejudgment interest. Defendant shall file any objections to specific time entries within ten days of the filing of the redlined exhibit. The Government may file a reply within ten days of the Defendant's response.

<u>Attorney fees paid by Merrill Lynch for representation of Yin</u>

Defendant objects to any payment of restitution for fees paid by Merrill Lynch to his defense attorney. Defendant asserts that these fees were advanced pursuant to a contractual agreement and that Merrill Lynch must seek reimbursement for fees advanced to his counsel under the terms of the agreement subject to specific defenses by suit under Delaware General Corporation law. Defendant contends that the appropriate and exclusive jurisdiction for this determination is the Delaware Court of Chancery. The government contends that the existence of an indemnification contract does not prevent an award of restitution for attorney fees paid to counsel for the Defendant by Merrill Lynch as a direct result of the offense conduct.

The record in this case establishes that Merrill Lynch advanced fees to pay counsel for Defendant Yin as a direct result of his offense conduct in this case pursuant to contractual agreement. 18 U.S.C. section 3664(f)(1)(B) provides "in no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution." 18 U.S.C. § 3664(f)(1)(B). The Court concludes that the availability of recovery in another forum does not affect the recovery of fees for losses suffered by Merrill Lynch "directly and proximately" as a result of Defendant's offense conduct. 18 U.S.C. § 3663(a)(2).

<u>Compensation paid to Defendant Yin</u>

Defendant contends that Merrill Lynch is not entitled to any restitution award for salary paid to him by Merrill Lynch. Defendant asserts that Merrill Lynch did not lose

any money as a result of his client account or transactions. Defendant explains that he did not receive a salary from Merrill Lynch and that all compensation he received came only from the client pursuant to an incentive compensation agreement.

The Government contends that Merrill Lynch is entitled to recoup "a portion of Defendant's salary" because Merrill Lynch paid Defendant for honest services and received something less. (ECF No. 48-14). The Government asserts that the incentive compensation model, as opposed to the predetermined salary model, has no bearing on the application of the restitution statute.

"There is no question that a portion of an individual's salary can be subject to forfeiture where, [] an employer pays for honest services but receives something less." *United States v. Bahel,* 662 F3d 610, 649 (2d Cir. 2011) (affirming restitution award to the United Nations for salary received by defendant following his suspension pending investigation when "he performed no services at all").

In this case, Defendant Yin was paid pursuant to a Financial Advisor Incentive Compensation Plan. Under the Plan, Defendant was paid pursuant to Production Credits and Production Range Cash Grid. The cash grid provided a percentage split of the production credits that the Defendant would receive, with the remainder going to Merrill Lynch. Even assuming that Merrill Lynch received something less than honest services, the Court must determine whether Merrill Lynch suffered a loss "directly and proximately" as a result of Defendant's offense conduct. 18 U.S.C. § 3663(a)(2). The record does not establish that Merrill Lynch paid any salary to Defendant Yin or that Merrill Lynch suffered any loss as a result of compensation paid to Defendant pursuant to the incentive compensation agreement.

Conclusion

The presentence report indicates that the Defendant has the ability to pay restitution. (ECF No. 36 at 17-18). The Government shall redline Exhibit D to indicate all time entries related to fees incurred responding to the SEC investigation. The Government shall refile the redlined exhibit under seal within ten days of the date of

1  this order accompanied by declaration from an individual with personal knowledge of
2  the procedure used to comply with the court's order and setting forth the total restitution
3  requested in light of this order, including any prejudgment interest. Defendant shall file
4  any objections to specific time entries within ten days of the filing of the redlined
5  exhibit. The Government may file a reply within ten days of the Defendant's response.

7  DATED: July 6, 2015

                                                    **WILLIAM Q. HAYES**
                                                    United States District Judge